**DATAPOINT CORPORATION, a Delaware Corporation, Defendant Below, Appellant,**

**v.**

**PLAZA SECURITIES COMPANY, and Arbitrage Securities Company, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: March 8, 1985.

Oral Decision: March 8, 1985.

Written Decision: July 31, 1985.

---

R. Franklin Balotti (argued), Jesse A. Finkelstein, and Gregory P. Williams of Richards, Layton & Finger, Wilmington, for appellant.

William T. Quillen (argued), James F. Burnett and Harding W. Drane, Jr. of Potter, Anderson & Corroon, Wilmington; Stuart L. Shapiro and Peter E. Greene of Skadden, Arps, Slate, Meaghér & Flom, New York City, for appellees.

Before HORSEY, MOORE and CHRISTIE, Justices.

HORSEY, Justice.

## I.

This appeal by Datapoint Corporation from an order of the Court of Chancery, preliminarily enjoining its enforcement of a bylaw adopted by Datapoint's board of directors, presents an issue of first impression in Delaware: whether a bylaw designed to limit the taking of corporate action by written shareholder consent in lieu of a stockholders' meeting conflicts with 8 *Del.C.* § 228, and thereby is invalid.[1] The Court of Chancery ruled that Datapoint's bylaw was unenforceable because its provisions were in direct conflict with the power

---

1. 8 *Del.C.* § 228 reads, in pertinent part:

§ 228. Consent of stockholders or members in lieu of meeting.

(a) Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

\*　\*　\*　\*　\*　\*

(c) Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders or members who have not consented in writing. In the event that the action which is consented to is such as would have required the filing of a certificate under any other section of this title, if such action had been voted on by stockholders or by members at a meeting thereof, the certificate filed under such other section shall state, in lieu of any statement required by such section concerning any vote of stockholders or members, that written consent has been given as provided in this section.

conferred upon shareholders by 8 *Del.C.* § 228. We agree and affirm.[2]

## II.

In December of 1984, Asher B. Edelman, general partner of both plaintiffs and beneficial owner of more than 10% of Datapoint's stock, advised the latter's chairman that he was interested in acquiring control of Datapoint. However, Datapoint's board of directors was opposed to this, and on January 11, 1985, when Edelman submitted a written proposal to acquire Datapoint, the offer was rejected the same day.

On January 24, Edelman renewed his offer and stated that if it were rejected he would consider the solicitation of consents from shareholders. Datapoint's composite certificate of incorporation then (and now) lacks any provision relating to the solicitation of shareholder consents under § 228. However, the next day Texas counsel to Datapoint recommended that the Datapoint board adopt a bylaw amendment to regulate consents. Counsel stated, "While the resolution will not prevent a hostile takeover, it will provide management with additional time to explore alternatives."

On January 28, Datapoint's directors, meeting telephonically, unanimously adopted bylaw amendments (the "January bylaw") which the Chancellor later found to be "designed to establish a procedure to govern any attempt to take corporate action on Datapoint's behalf by written shareholder consent." [3]

On January 30, 1985, Edelman withdrew his offer to buy Datapoint and announced his intention to solicit shareholder consents for removal of the board and the election of his own candidates. On February 5, plaintiffs commenced this action in the Court of Chancery for preliminary and permanent injunctive relief against enforcement of Datapoint's January bylaw amendment.

In response to plaintiffs' suit, Datapoint's board, on February 8, filed a counterclaim for declaratory judgment that the January bylaw was valid and to enjoin plaintiffs from violating the bylaw. On February 12, Datapoint's board amended its January bylaw on the recommendation, among others, of Datapoint's investment advisor, Kidder Peabody. Kidder's merger and acquisition specialist advised Datapoint's board of the need of "at least 60 days ... to achieve a transaction or series of transactions which would best serve the interests of all of Datapoint's shareholders." Datapoint's February bylaw provided, in part, that:

> (1) No action by shareholder consent could take place until the 45th day after the established record date;

> (2) That a record date should be fixed of not more than (or less than) 15 days after receipt of a shareholder's notice of intent to solicit consents, unless requested by the shareholder; and

> (3) No shareholder consent action would become effective "until the final termination of any proceeding which may have been commenced in the Court of Chancery of the State of Delaware or

---

2. This interlocutory appeal was heard on an expedited basis in light of the nature of the preliminary injunction issued. Our decision to affirm was announced in an oral ruling in open court on March 8, 1985, at which time we stated that an opinion would follow. And, although the parties subsequently stipulated to a dismissal of the action in the Court of Chancery, this opinion is being issued in order that this Court's opinion as to this issue of first impression may be reported.

3. The January bylaw would have required any Datapoint shareholder wishing to solicit consents to elect directors to:

> (1) Give written notice of nominations to the board to the corporation 60 days in advance of execution of consents or mailing of solicitation material to stockholders;
> (2) Disclose in the notice extensive details concerning the solicitation and nominees;
> (3) Accept a record date not sooner than 30 days from the notice date.
> The bylaw also: *deferred* the effective date of shareholder consent action until the 59th day after the record date; or during the pendency of any lawsuit brought by Datapoint (or anyone) challenging the validity of the consents and until the corporate secretary should determine the lawsuit not to be "pursued expeditiously and in good faith."

any other court of competent jurisdiction for an adjudication of any legal issues incident to determining the validity of the consents, unless and until such court shall have determined that such proceedings are not being pursued expeditiously and in good faith.

On February 19, Datapoint's board, in response to Edelman's notice of intent to solicit shareholder consents, set March 4 as the record date and April 18 as the "action" date for counting shareholder consents submitted under § 228.[4] On February 28, Datapoint filed suit in the United States District Court for the Western District of Texas to invalidate any consents obtained by plaintiffs. The suit thereby triggered the litigation "hold" mechanism of the February bylaw. ·

On March 5, 1985, the Court of Chancery granted plaintiffs a preliminary injunction enjoining defendant Datapoint from enforcing the February bylaw. Based on the Court's construction of § 228 and the impact of Datapoint's February bylaw, the Court concluded that plaintiffs had made "a clear and reasonable showing ... of the likelihood that the Datapoint bylaw directly conflicts with the statutory grant of power to the shareholders" under § 228; and that plaintiffs had demonstrated the likelihood of immediate irreparable harm to their efforts to solicit consents under § 228 for the purpose of removing Datapoint's present board and electing a new slate of directors.

### III.

On appeal, defendant asserts essentially a three-step argument in support of its contention that the Chancellor committed legal error in enjoining the enforcement of Datapoint's February bylaw. First, defendant contends that the Court erred in construing § 228 as not permitting the consent solicitation procedure—as to which § 228 is silent—to be regulated by bylaw. Second, defendant argues that the Court erred in construing § 228 as requiring a consent accomplished thereunder to be put into effect immediately and without any review of its legality being permitted. Defendant then makes a derivative argument which assumes the correctness of its first two contentions. It argues that the February bylaw constitutes a reasonable regulation of a shareholder § 228 solicitation. Defendant contends that the "delay and review" features of its bylaw are designed to prevent the possibility of "midnight raids" on an uninformed electorate. However, a further objective of the February bylaw's 45-day waiting period (actually 60 days in the aggregate), defendant concedes, is to permit management to solicit its own proxies on the subject.[5]

As to Datapoint's first contention, defendant argues that § 228's introductory language ("Unless otherwise provided in the certificate of incorporation") means that the right of shareholders to act by written consent in lieu of meeting may only be denied shareholders by a charter provision; and that the Chancellor erroneously construed the clause to mean that the regulation of shareholder consent action may not be imposed by a board of directors through the enactment of bylaws. Since bylaws are the proper means for implementing the internal regulation of corporations, defendant reasons that corporate elections, including those accomplished under § 228, are proper subjects for regulation by bylaw. 8 *Del.C.* § 109(b).[6]

---

4. Seven days later, Datapoint's board disclosed: (1) that it had lost over $15.8 million in its second fiscal quarter ending January 26, 1985; and (2) that it had removed $15.3 million of its funds from its working capital. $13.1 million of that sum had been earmarked to fund 36 golden parachute contracts and future litigation expenses for directors and employees; and $2.1 million had been spent to buy annuities for Datapoint's present and former directors.

5. Thus, the February bylaw is not intended simply to provide management with a mechanism to review the legal sufficiency of shareholder consent action under § 228 but rather time as well to contest the shareholder action and to solicit opposition proxies.

6. 8 *Del.C.* § 109(b) states:
   (b) The bylaws may contain any provision, not inconsistent with law or with the certifi-

Relating its February bylaw to general Delaware law, defendant argues that Datapoint's bylaw represents reasonable internal corporate regulation which is authorized under § 109(b) and not inconsistent with § 228. The Chancellor's conclusion to the contrary is said to be counter to long-standing principles established in *Gow v. Consolidated Coppermines Corp.*, Del.Ch., 165 A. 136 (1933); 8 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 4208 (rev.perm.ed 1982).

Plaintiffs respond: one, that § 228 does not countenance *any* restriction or delay in the consummation of a valid § 228 consent action; two, that § 228's introductory language, "Unless otherwise provided in the certificate of incorporation," must be construed as barring any board bylaw regulating a § 228 action; and three, that, in any event, Datapoint's February bylaw clearly violates § 228 by imposing unreasonable delays upon the consummation of a shareholder consent action.

### IV.

The issue in this case is not an abstract one. Nor is the case in its present posture as multifaceted as the parties make it. The issue is not whether § 228 tolerates any delay in effectuating a shareholder consent action taken thereunder. Nor is the issue whether § 228 permits a board of directors to regulate by bylaw solicitation procedures under § 228. These threshold disputes between the parties are more theoretical than real. The injunctive relief that is here challenged was bottomed on the Court's finding of likelihood that the Datapoint bylaw "directly conflicts" with § 228's grant of power to the shareholders

and the Court's conclusion that the lengthy delay provisions of the bylaw are "totally at odds" with the statutory right given shareholders to take action by written consent under § 228.

In the course of reaching this result, the Court made several preliminary rulings that have undoubtedly prompted counsel to take the alternative positions outlined above. For example, the Chancellor ruled that § 228 "gives shareholders the right to take immediate action by written consent provided that they have at a given point in time obtained a written expression of authority on behalf of shares representing sufficient votes to take such action." Similarly, the Chancellor ruled that § 228 "contemplates no waiting period once the necessary written consent is in hand, and it contemplates no review by corporate officials or others as a condition to the shareholder action becoming effective." We think the former statement can be reasonably construed to mean or assume that the right to immediate action is legally sufficient; and that the latter statement may be similarly construed.[7]

The determinative question is whether Datapoint's February bylaw conflicts with the letter and intent of § 228. The Chancellor found a clear conflict; and we agree with the Court's construction of § 228 as it applies to the bylaw before us.

Confining our ruling to this bylaw, we find it clearly in conflict with the letter and intent of § 228. Section 228 contains no language suggesting that action accomplished by stockholders through written consent "without a meeting, without prior notice and without a vote" may be lawfully

---

cate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.

7. The tentative nature of the Court's views on these threshold issues is borne out by the Court's language in concluding that injunctive relief should be granted: "In short, the opening language of § 228—'[u]nless otherwise provided in the certificate of incorporation'—would *seem*

to bear out Edelman's arguement that no restriction can be placed upon the right of shareholders to take action by written consent ... unless it is accomplished in the certificate of incorporation itself. The statute would *seem* to reflect a legislative policy that if you have the votes you can act immediately without first seeking to ascertain how the other shareholders might be inclined to vote on the action being taken." (emphasis added).

deferred or thwarted on grounds not relating to the legal sufficiency of the consents obtained. The Chancellor similarly construed § 228 in stating that it "gives shareholders the right to take immediate action by written consent provided that they have at a given point in time obtained a written expression of authority on behalf of shares representing sufficient votes to take such action."

■■■■ Datapoint's bylaw is not designed simply to defer consummation of shareholder action by consent in lieu of meeting until a ministerial-type review of the sufficiency of the consents has been performed by duly qualified and objective inspectors. Instead, the bylaw imposes an arbitrary delay upon shareholder action in lieu of meeting by postponing accomplishment of such action until 60 days after the corporation's receipt of a shareholder's notice of intent to solicit consents. By delaying the effective date of shareholder consents until the corporation's secretary (or inspectors) determines the validity of those consents and by postponing that determination until 45 days after the record date as set by § 213, the bylaw circumvents § 228, under which action taken is to be effective when sufficient consents are signed.

This delay is not only arbitrary, it is unreasonable. For the underlying intent of the bylaw is to provide the incumbent board with *time* to seek to defeat the shareholder action by management's solicitation of its own proxies, or revocations of outstanding shareholder consents. Defendant concedes that the purpose of the delay provisions of Datapoint's bylaw is to give management an opportunity to distribute "opposing solicitation material." Moreover, the bylaw's further provision staying the effective date of any shareholder con-

sent action until termination of any lawsuits challenging such action effectively places within the incumbent board the power to stultify, if not nullify, the shareholders' statutory right. Such a result can only be found to be "repugnant to the statute" which the bylaw is intended to serve, not master. *Kerbs v. California Eastern Airways*, Del.Supr., 90 A.2d 652, *reh'g denied*, 91 A.2d 62 (1952).[8]

Although we find defendant's bylaw to be invalid, we do not hold that § 228 must be construed as barring a board of directors from adopting a bylaw which would impose minimal essential provisions for ministerial review of the validity of the action taken by shareholder consent. However, defendant's bylaw, as adopted, is so pervasive as to intrude upon fundamental stockholder rights guaranteed by statute. Therefore, the decision of the Court of Chancery, granting a preliminary injunction against the enforcement of the bylaw, is AFFIRMED.

---

**8.** Nothing found in *Gow v. Consolidated Coppermines, supra,* is to the contrary. *Gow* involved a conflict between bylaw and charter over the size of the board of directors and the interplay of statute that expressly delegated authority to a board to determine the numbers of its directors by bylaw. Holding the bylaw to prevail, the Court stated that they "take their superior au-

thority over the charter in this particular matter because they operate under the superior mandate of the statute." 165 A. 141. In contrast, here, § 228 confers its mandate of action exclusively upon the shareholders and without delegating any authority to the board to regulate, in the sense of interfere with, action taken by shareholders by consent in lieu of meeting.