**EMPIRE OF CAROLINA, INC., a Delaware corporation, Plaintiff,**

v.

**The DELTONA CORPORATION, a Delaware corporation, Frank E. Mackle, Jr., Frank E. Mackle, III, Neil E. Bahr, Thomas B. McNeil, Edgar N. Moore, William N. O'Dowd, Jr. and Conrad S. Young, Defendants.**

Court of Chancery of Delaware,
New Castle County.
Submitted: Oct. 24, 1985.
Decided: Oct. 31, 1985.
Revised Nov. 4, 1985.

A. Gilchrist Sparks, III, Kenneth J. Nachbar, Michael Houghton (Morris, Nichols, Arsht & Tunnell, Wilmington, of counsel), Rubin, Baum, Levin, Constant & Friedman, New York City, for plaintiff.

Jesse A. Finkelstein, and Gregory V. Varallo (Richards, Layton & Finger, Wilmington, of counsel), Leo Herzel, Alan N. Salpeter, Scott J. Davis, and Daniel M. Harris, Mayer, Brown & Platt, Chicago, for defendants.

HARTNETT, Vice Chancellor.

The plaintiff, Empire of Carolina, Inc., seeks a preliminary injunction preventing defendants from enforcing a stockholder record date set by defendants in response to the solicitation by the plaintiff of written consents seeking to remove the Board of Directors of The Deltona Corporation. The plaintiff contends that defendants, The Deltona Corporation and its Board of Directors, acted in violation of the Delaware General Corporation Law when they established a record date after plaintiff had already established it by exercising and expressing a written consent pursuant to 8 *Del.C.* § 228.

I find that defendants set the stockholder record date before the plaintiff had properly expressed a written consent executed in accordance with 8 *Del.C.* § 228 and, therefore, the setting of the date was lawful. Plaintiff's application for a preliminary injunction must, therefore, be denied.

## I

Plaintiff, Empire of Carolina, Inc., with holdings of approximately 1,509,900 shares—or 29%—of the outstanding shares of common stock, is presently the largest shareholder of The Deltona Corporation, a Delaware corporation with its principal place of business in Florida. On October 7, 1985, Empire filed a Schedule 13D with the Securities and Exchange Commission in which it disclosed its intention to solicit written consents to remove and replace each of Deltona's directors and to amend Deltona's By-laws in certain respects. Empire's announced plan, if the consent solicitation is successful, is to liquidate Deltona as promptly as possible.

On October 7, 1985, Empire also apparently executed a written consent pursuant to 8 *Del.C.* § 228 with respect to the shares of which it was the record owner. This statute permits the taking of certain stockholder action by the execution of a written consent in lieu of a vote at a meeting of stockholders. Thereafter, on the same date, Empire delivered by hand to Delto-

na's principal place of business in Florida a letter demanding inspection of Deltona's stocklist pursuant to 8 *Del.C.* § 220. This demand letter on page two indicated that the purpose of the demand was to enable plaintiff to communicate with the other stockholders in connection with a solicitation for written consents. No copy of the purported written consent was delivered to Deltona nor any other notice was given of the purported execution of a written consent.

On October 11, 1985, Michelle R. Garbis, Corporate Secretary of Deltona, sent a letter to Empire stating in part that Deltona's Board of Directors had held a Special Meeting on October 10, 1985 and, acting pursuant to 8 *Del.C.* § 213(a), had set Monday, November 18, 1985 as the record date for determining stockholders entitled to express written consent to the corporate action proposed by Empire.

Prior to this action, on or about September 9, 1985, Deltona had entered into a Letter of Intent with Topeka Group, Inc. whereby Deltona would issue, and Topeka would purchase, 4,000,000 shares of newly created voting preferred stock of Deltona, with Topeka having an option to purchase an additional 545,000 shares of such stock. On October 7, 1985 Empire filed suit against Topeka, Deltona, and the directors of Deltona in the United States District Court for the Southern District of Florida seeking to enjoin the Topeka transaction. Empire alleged that Deltona's directors agreed to sell the preferred stock to Topeka in order to entrench themselves in office and not for any legitimate business purpose. To assist the Florida Court in resolving the case, Deltona agreed not to close the Topeka transaction until after the Court held a preliminary injunction hearing on November 1, 1985.

It is obvious, therefore, that if November 18, 1985 is found to be a validly set stockholder record date, and prior to that date 4,000,000 new shares of Deltona preferred stock are issued to Topeka, Empire's attempt to take over control of Deltona will

likely be thwarted. Plaintiff, in such a case, will be unable to obtain written consents executed by a majority of the stockholders of Deltona and thus unable to remove Deltona's present directors and affect the other actions sought in the consent solicitation.

## II

A preliminary injunction is an extraordinary remedy which is only granted in order to prevent truly irreparable injury. *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599 (1974), *aff'd.*, Del.Supr., 316 A.2d 619 (1974); *Wylain, Inc. v. TRE Corp.*, Del.Ch., 412 A.2d 338 (1979). Before a preliminary injunction will be granted, the plaintiff must show the reasonable probability of success on the merits. *Gropper v. North Central Texas Oil Co.*, Del.Ch., 114 A.2d 231 (1955); *Bayard v. Martin*, Del. Supr., 101 A.2d 329 (1953). This the plaintiff has not done.

## III

Section 8 *Del.C.* § 213 states:

"**§ 213. Fixing date for determination of stockholders of record.**

(a) In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the board of directors may fix, in advance, a record date, which shall be not more than 60 nor less than 10 days before the date of such meeting, nor more than 60 days prior to any other action.

(b) If no record date is fixed:

(1) The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day

next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held;

(2) The record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the board of directors is necessary, shall be the day on which the first written consent is *expressed;*

(3) The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

(c) A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the board of directors may fix a new record date for the adjourned meeting." (emphasis added)

Empire argues that 8 *Del.C.* § 213(b)(2) is controlling. Its argument is based on the fact that on October 7, 1985, Empire demanded Deltona's stocklist and stated on page two of its demand letter that "The purpose of this demand is to enable Holder to communicate with its fellow Company stockholders respecting the solicitation of consents for the removal of the Company's current directors, the election in their stead of Holder's nominees and the approval of certain amendments to the Company's By-laws." It argues that this letter meets the mandate of 8 *Del.C.* § 213(b)(2) and sets the date that "the first written consent is expressed." It therefore argues that because Deltona's Board had not previously fixed a record date, the appropriate record date should be October 7—the day of the letter.

In support of its position, Empire relies heavily upon the holding in *Midway Airlines, Inc. v. Carlson,* C.A. No. 85–319 LON (D.Del., June 14, 1985). In that unreported case the U.S. District Court held that, "... the Midway board does not have the power to change the record date after the first consent has been filed." Yet, as the Court in *Midway* noted, the written consent executed in conformity with 8 *Del.C.* § 228 had been actually filed with the targeted corporation because the insurgent shareholders executed and physically delivered a written consent to Midway's Board. In the present case, no written consent was ever filed by Empire with Deltona's Board. In fact, no written consent was delivered to Deltona even after a discovery request was made for the consent. Instead, the assertion that a consent solicitation was about to take place was merely buried in Empire's demand for Deltona's shareholder list.

"Express" is defined in BLACK'S *Law Dictionary* as:

"Clear; definite; explicit; plain; direct; unmistakeable; not dubious or ambiguous. Declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference. Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct ..."

The use of the words "is expressed" in the statute therefore requires that the executor of a written consent who seeks to impose a stockholder record date on a corporation must clearly, explicitly, directly and unmistakeably make known that fact to the corporation. The plaintiff did not do so and therefore the directors of Deltona were free to set a stockholder record date.

It is quite understandable that the General Assembly would require something more than a mere oblique reference to a written consent solicitation to trigger 8 *Del.C.* § 213(b)(2). As recent cases in this Court have demonstrated, the taking of action by written consent instead of at a stockholders meeting has great potential for mischief. Cf. *Freeman v. Fabiniak,* Del.Ch., C.A. No. 8035–N.C., Hartnett, V.C. (August 15, 1985), where competing boards jockeyed back and forth for control leaving

it unclear who was in charge of the corporation and eventually resulting in some violance. The summary removal of directors by the execution of written consents, sometimes without prior notice to a board, can interfere with orderly corporate governance and cause great injury to an operating corporation and its stockholders. The provisions of 8 *Del.C.* § 213(b)(2) must be strictly complied with if any semblance of corporate order is to be maintained.

## IV

Having concluded that the setting of November 18, 1985 as the record date by Deltona's Board of Directors was not in violation of 8 *Del.C.* § 213, I must now address Empire's second argument that even if a board may, pursuant to 8 *Del.C.* § 213, fix a record date, the adoption of the November 18, 1985, record date by Deltona's Board violated 8 *Del.C.* § 228, the statute which permits stockholders to take certain actions by written consent rather than by a vote at a stockholders meeting, and was thus invalid under Delaware law. This statute is set forth in the recent Delaware Supreme Court opinion in *Datapoint Corp. v. Plaza Securities Co.*, Del.Supr., 496 A.2d 1031 (1985). In making this argument, Empire primarily relies on that case.

■ Empire's reliance upon *Datapoint* is misplaced. In that case, the board of the corporation attempted to restrict the shareholder consent process through by-laws, although 8 *Del.C.* § 228 does not provide for the imposition of any restrictions except by a charter amendment. The Court therefore held that a board could not impose any restrictions on the written consent process except as to reasonable requirements necessary to assure the sufficiency of the written consents. In the present case, however, the Board acted in conformity with express authority set forth in 8 *Del.C.* § 213(a). Neither the holding in *Datapoint* nor any provision in the Delaware Code imposes on the Board of Directors of a corporation a mandate to set a record date which would give any stockholder an advantage with respect to taking action by written consent. To the contrary, 8 *Del.C.* § 213(a) gives the directors discretion in fixing a record date as long as the date selected is within the parameters established by the statute. I therefore find that the provisions of 8 *Del.C.* § 228 were not violated by the setting of November 18, 1985, as the record date.

## V

The final issue raised by Empire is that the setting of November 18, 1985, as the record date was an impermissible manipulation of the corporate machinery. Cf. *Lerman v. Diagnostic Data, Inc.*, Del.Ch., 421 A.2d 906 (1980). *Schnell v. Chris-Craft Indus., Inc.*, Del.Supr., 285 A.2d 437 (1971).

This issue cannot be considered by me, however. If there was any impermissible manipulation of the record date, it is because before November 18, 1985, additional shares of stock will be issued which may make moot plaintiff's attempt to take over Deltona by the use of the written consent procedure. The question of whether this stock can be issued, however, was before the U.S. District Court in Florida before this Delaware action was filed and will be addressed on November first. It would, therefore, be presumptuous and improper for me to comment on that aspect of this contest.

Plaintiff's application for a preliminary injunction must be denied. IT IS SO ORDERED.