**EMPIRE OF CAROLINA, INC., a Delaware corporation, Plaintiff-Appellant,**

**v.**

**The DELTONA CORPORATION, a Delaware corporation, Frank E. Mackle, Jr., Frank E. Mackle, III, Neil E. Bahr, Thomas B. McNeil, Edgar N. Moore, William N. O'Dowd, Jr. and Conrad S. Young, Defendants-Appellees.**

Supreme Court of Delaware.

Submitted: Nov. 6, 1985.

Decided: Nov. 6, 1985.

Opinion Issued: Sept. 19, 1986.

A. Gilchrist Sparks, III (argued) and Kenneth J. Nachbar of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff-appellant.

Scott J. Davis (argued) of Mayer, Brown & Platt, Chicago and Allen M. Terrell, Jr., Jesse A. Finkelstein and Kevin Abrams of Richards, Layton & Finger, Wilmington, for defendants-appellees.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

HORSEY, Justice:

Empire of Carolina, Inc., a Delaware corporation ("Empire"), appeals a decision of the Court of Chancery denying its application for a preliminary injunction against Deltona Corporation, a Delaware corporation ("Deltona"), and Deltona's Board of Directors. Empire, as a shareholder of Deltona, sought injunctive relief to prevent Deltona's Board from setting on October 10, 1985 a stock record date of November 18, 1985 for Empire's October 7, 1985 notice of solicitation of shareholder consents under 8 *Del.C.* § 228.[1]

The issues involved are matters of first impression: whether any notice that shareholder consents will be solicited under section 228 precludes a board of directors from acting under section 213(a) to set a record date for shareholder consent action different from the record date established by operation of section 213(b)(2); and the interaction of sections 213[2] and 228 of the Delaware Corporation Code. Two specific questions are presented: (1) whether Empire's notice in its October 7 demand letter that shareholder consents will be solicited established October 7 as the day on which the first written consent is "expressed" within the meaning of section 213(b)(2), thus precluding Deltona's Board from pro-

---

1. 8 *Del.C.* § 228 reads, in pertinent part:
   **§ 228. Consent of stockholders or members in lieu of meeting.**
   (a) Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shareholders entitled to vote thereon were present and voted.

2. 8 *Del.C.* § 213 states, in pertinent part:
   **§ 213. Fixing of date for determination of stockholders of record.**

(a) In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or to any adjournment thereof, *or to express consent to corporate action in writing without a meeting,* or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or other lawful action, the board of directors may fix, in advance, a record date, which shall not be more than 60 nor less than 10 days before the date of such meeting, nor more than 60 days prior to any other action.

(b) If no record date is fixed:

⁕ ⁕ ⁕ ⁕ ⁕ ⁕

(2) *The record date* for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the board of directors is necessary, *shall be the day on which the first written consent is expressed.* (emphasis added).

ceeding under section 213(a) to fix a record date different from the record date stated in the demand letter; and (2) assuming the Board's authority to act under section 213(a), notwithstanding the October 7 notice, whether the Board's designation of November 18 was in violation of section 228 and contrary to this Court's decision in *Datapoint Corp. v. Plaza Securities Co.,* Del.Supr., 496 A.2d 1031 (1985).

The Court of Chancery held that on October 10 the Board's authority under section 213(a) was not displaced by the provisions of section 213(b)(2) because Empire had failed to meet the requirements of the latter. The Court interpreted subsection (b)(2) to mean: that for a record date to be "fixed," a soliciting shareholder must clearly, explicitly, directly and unmistakably make known to the corporation: (1) that a written consent bearing a given date has been obtained; and (2) the substance of the shareholder action consented to under section 228. Thus, the Court held that Deltona's Board action under section 213(a) did not violate section 228 and that Empire's reliance upon *Datapoint, supra,* was misplaced. We agree and affirm.[3]

## I

Most of the facts are not in dispute. Empire, with holdings of 29% of Deltona's common stock, is currently Deltona's largest shareholder. On October 7, Empire filed a Schedule 13D with the Securities and Exchange Commission in which it disclosed its intention to solicit written consents to remove and replace each of Deltona's directors and to amend Deltona's By-laws in certain respects. Empire's announced plan, if the consent solicitation were successful, was to liquidate Deltona as soon as possible. Also on October 7, Empire purportedly executed a written consent pursuant to section 228 with respect to the Deltona shares of which it was record owner.[4] Later that same day, Empire delivered by hand to Deltona's principal place of business a letter demanding inspection of Deltona's shareholder list pursuant to 8 *Del.C.* § 220.[5] The pertinent language of the demand letter reads as follows:

Pursuant to Section 220 of the General Corporation Law and the common law of the State of Delaware, Holder [Empire] is entitled to, and demands, as part of the foregoing demand for inspection, the following:

\*    \*    \*    \*    \*    \*

(E) The information and records specified in paragraphs (A), (B) and (D) above [Deltona's shareholder list] as of October 7, 1985, the record date established for

---

**3.** This interlocutory appeal was heard on an expedited basis in light of the nature of the preliminary injunction issued. Our decision to affirm was announced in an order issued November 1, 1985, with the notation that this opinion would follow at a later date.

**4.** It should be noted that a factual question exists as to when Empire first executed its written consent. On October 10, Deltona served a document request upon Empire in related litigation before the United States District Court for the Southern District of Florida. *Empire of Carolina, Inc. v. Mackle,* S.D.Fla., C.A. No. 85-3254, Marcus, J. (November 5, 1985). The request called for *inter alia,* "[a]ll documents … reflecting or referring to … any and all efforts by Empire to gain control of Deltona"; "[a]ll documents that reflect or refer to Item 4 of Empire's most recent 13D filing with the Securities and Exchange Commission"; and, "[a]ll documents which refer, reflect or relate to Del-

tona stock … transactions, potential transactions, or any other aspect of the company." On October 15, Empire responded to these document requests. No consent was produced. On October 16 Empire's counsel represented to the District Court that Empire had produced all responsive documents, except the preliminary proxy materials it had submitted to the SEC. Empire's purported consent is clearly a responsive document. Given what Empire's counsel told the Court on October 16, one could conclude that the consent attached to Empire's motion for a preliminary injunction was executed after October 15, and then backdated. [This is the same litigation referred to later in this opinion.]

**5.** Although the exact date is unknown, Deltona admitted in its answer to Empire's complaint that it received on or before October 10 a copy of the Schedule 13D that Empire filed with the SEC.

the granting of consents referred to below. . . .

The purpose of this demand is to enable Holder to communicate with its fellow Company stockholders respecting the solicitation of consents for the removal of the Company's current directors, the election in their stead of Holder's nominees and the approval of certain amendments to the Company's By-Laws.

Empire, however, did not provide Deltona with its written consent or the written consent of any other shareholder to the proposed corporate action on October 7 or before Deltona's Board meeting on October 10.[6]

On October 10, Deltona's Board of Directors held a Special Meeting and, acting pursuant to section 213(a), set November 18 as the record date for determining shareholders entitled to express written consent to Empire's proposed corporate action.

\*     \*     \*

Prior to this action, in early September, Deltona had entered into a Letter of Intent with Topeka Group, Inc. whereby Deltona would sell Topeka 4,000,000 shares of preferred stock and grant Topeka an option to purchase an additional 545,000 shares.[7] On October 7 Empire filed suit against Topeka, Deltona and Deltona's Board of Directors in the United States District Court for the Southern District of Florida seeking to enjoin the Topeka transaction. Empire alleged that Deltona's Board of Directors agreed, for no legitimate business purpose, to sell preferred stock to Topeka in order to entrench themselves in office. Deltona agreed not to close the Topeka transaction until after the District Court held a preliminary injunction hearing on November 1, 1985.

It is obvious, therefore, that if this Court found November 18 as the validly set record date, and prior to that date 4,000,000 new shares of Deltona preferred stock were issued to Topeka, Empire's attempt to take control over Deltona would likely be defeated. Empire would be unable to obtain written consents executed by a majority of Deltona's shareholders and thus would be unable to remove Deltona's current directors and amend the corporation's By-laws.

## II

On appeal, Empire asserts the same two arguments that it presented to the Court of Chancery.[8] *First*, Empire contends that its October 7 demand letter for Deltona's shareholders list meets the requirements of section 213(b)(2), thus establishing October 7 as the date that the first written consent is "expressed." Plaintiff further argues that because Deltona had not set a record date prior to October 7, it did not have authority to act pursuant to section 213(a) and to set a different record date on October 10. *Second*, Empire argues that, assuming Deltona's Board had authority to fix a record date on October 10, the adoption of November 18—a date six weeks

---

**6.** In an amendment to its Schedule 13D, Empire indicated that it would solicit shareholder consent to amend Deltona's By-laws to, among other things, create a classified board of directors. Empire, however, never informed, nor did Deltona learn, of the other proposed By-law amendments before the October 10 Board of Directors meeting.

**7.** The Letter of Intent provides that each share of stock to be issued to Topeka will be entitled to equivalent voting rights of one share of Deltona common stock. Therefore, upon issuance of 4,000,000 shares of the preferred stock, Topeka will hold 43.3% of the voting securities of Deltona, and if Topeka exercises its option to acquire

545,000 additional shares, it will hold approximately 46.5% of Deltona's voting securities. Upon issuance of 4,000,000 shares of preferred stock to Topeka, Topeka and Mackle [Deltona's President and Chief Executive Officer] will together own approximately 48.7% of Deltona's voting securities. If Topeka exercises its 545,000 share option, it and Mackle will together own over 51% of Deltona's voting securities.

**8.** On appeal, Empire abandoned the third argument it raised before the Chancery Court—that the setting of November 18 as the record date was an impermissible manipulation of the corporate machinery. Therefore, we will not address this argument.

after the demand letter—violated section 228 and was contrary to *Datapoint, supra.*

In response, Deltona argues: (1) that to satisfy the requirements of section 213(b)(2), more than mere execution of a written consent is necessary; and (2) that the Deltona Board's decision to set November 18 as the record date for Empire's proposed corporate action was a legitimate business judgment.

### III

Section 213 governs the fixing of the date for determining stockholders of record for the taking of any corporate action by vote either at a stockholders' meeting or by written consent without a meeting. 8 *Del.C.* § 213. This section establishes two methods for determining a record date for shareholder action by written consent. Subsection (a) provides that "the board of directors may fix, in advance, a record date which shall not be ... more than sixty days prior to [such] action." 8 *Del.C.* § 213(a). Subsection (b) provides an alternative method which becomes effective only if a board of directors has not acted to fix a record date pursuant to subsection (a). Subsection (b)(2) deals specifically with shareholder consent actions. It provides that "[i]f no record date is fixed ... [t]he record date ... shall be the day on which the first written consent is expressed." 8 *Del.C.* § 213(b)(2).[9]

Subsection 213(a) thereby vests primary authority to fix a record date with the board of directors. This is consistent with the fundamental principle of Delaware Corporate Law that duly elected directors manage the business and affairs of the corporation. *See* 8 *Del.C.* § 141(a); *Unocal Corp. v. Mesa Petroleum Co.,* Del. Supr., 493 A.2d 946, 953 (1985); *Pogostin v. Rice,* Del.Supr., 480 A.2d 619, 624 (1984).

Turning to the substance of subsection (b)(2), it fixes the record date for shareholders entitled to express consent in terms of the date on which the first written consent "is expressed" rather than in terms of the day on which the first written consent is executed. To give this language meaning requires that a distinction be made between expression and execution. Execution is synonymous with signing a document.[10] Expression, however, is something more than execution: Expression requires that the shareholder communicate to the corporation not only that the consent has been executed, but the nature of the corporation action consented to.

Empire's argument to the contrary is not persuasive. Empire construes section 213(b)(2) as permitting a record date to be established on the day of execution of the first written consent without regard to whether the corporation has knowledge of the record date and the nature of the shareholder action. To adopt such a rule could lead to mischievous results and seriously interfere with a board's execution of its responsibilities to manage the corporation. Record dates could constantly shift as consents with earlier dates are filed. Similarly, shareholders could back-date their consents to exclude more recent shareholders in order to obtain some tactical advantage.[11] Management as well as shareholders are entitled to know what action is being proposed to be taken by a consent procedure "that entirely dispenses with the give-and-take of human assemblies." E. Folk, *The Delaware General Corporation Law, supra,* § 228 at 279.

Thus, in order to establish certainty as to when a record date has been set and what corporate action shareholders are

---

**9.** Subsection (b) was first added to section 213 in 1967; and subsection (b)(2) was added in 1969. "Without counterpart in the old law, § 213(b) states applicable rules when the board fails to fix a record date." E. Folk, *The Delaware General Corporation Law,* § 213 at 219 (1972).

**10.** *See, e.g.,* 8 *Del.C.* §§ 103(a)(1), 242(b)(1), 242(b)(3), 243(b), 246, 252(c), 257(c) and 275(b).

**11.** As noted earlier, *see supra* note 4, a serious factual question exists in this case as to the actual date Empire executed its written consent.

pursuing under section 228, this Court must require that the soliciting shareholder communicate to the corporation the date that the first written consent has been executed and the substance of the proposed corporate action to be taken.[12]

■ Applying this rule, the determinative question is whether Empire's notice that it would be soliciting shareholder consents in its October 7 demand letter established that day as the date on which the first written consent was "expressed" for purposes of section 213(b)(2). The Vice Chancellor found that Deltona's Board of Directors had not been preempted on October 10 from fixing a later record date for Empire's proposed corporate action. We agree.

The provisions of section 213(b)(2) may not preempt a board from exercising its authority under section 213(a) to fix the record date for shareholder consent actions under section 228 until the following has occurred: (1) the execution of the first written shareholder consent to the proposed action; and (2) the delivery of the consent and communication of the substance of the action to the corporation. Empire's demand letter and Schedule 13D (delivered to Deltona on October 7, or before Deltona's Board of Directors' meeting on October 10) disclosed only in part the full extent of the corporate action to be undertaken by shareholder consent. Empire's notice failed to describe the proposed By-law amendments. The documents also failed to inform Deltona that Empire had in fact obtained a first written consent to the proposed action.

Therefore, we must rule that Empire having failed to comply with section 213(b)(2), Deltona's Board of Directors was not divested on October 10 of its authority under section 213(a) to fix a record date other than October 7 for Empire's consent solicitation.

IV

Lastly, we consider Empire's second argument—that the adoption of a November 18 record date violated section 228. Empire, relying exclusively upon this Court's holding in *Datapoint*, 496 A.2d at 1031, argues that under section 228, shareholders have an immediate right to act upon achieving a majority of written consents.

In *Datapoint*, the corporation's board of directors adopted a by-law provision that imposed a sixty-day delay upon all shareholder action by written consent. *Id.* at 1033–34. Confining our ruling to this particular by-law, we found that it was in conflict with the letter and intent of section 228. *Id.* at 1035. Section 228 contains no language suggesting that action accomplished by shareholders through written consent may be lawfully deferred or thwarted on grounds not related to the legal sufficiency of the consents obtained. *Id.* at 1035–36. We, therefore, held that the by-law was invalid because it imposed an arbitrary delay upon consummation of shareholder action by written consent. *Id.* at 1036.

*Datapoint*, however, is distinguishable. In *Datapoint* we did not address the issue presented in this case—whether a board of directors acting pursuant to section 213(a)

---

12. We do not find *Midway Airlines, Inc. v. Carlson*, D.Del., 628 F.Supp. 244 (1985), to support a contrary construction of section 213(b)(2), notwithstanding the different result. In *Midway*, a group of shareholders conducting a consent solicitation executed and physically delivered a written consent to Midway Airlines' Board of Directors. The shareholders then asked for Midway's list of convertible debenture holders on the theory that the corporation might set a later record date before which these bondholders might convert their bonds into Midway stock. The District Court interpreted section 213(b)(2) to apply "whenever a record date has not been fixed by the time the first written consent is filed." *Id.* at 246. The Court, therefore, held that the shareholders were not entitled to the bondholder list because "the Midway Board does not have the authority to change the record date after the first consent has already been filed." *Id.* Thus, the District Court viewed a record date as not fixed under section 213(b)(2) for purposes of preempting board action under section 213(a) until the first written consent was filed with the corporation.

may, in the exercise of its business judgment, set a record date that would in any degree delay shareholder action by written consent.

The fixing of a record date for determining stockholders entitled to vote is essential to the exercise of effective shareholder action with or without a meeting. Responsibility for fixing the record date is also an essential function of corporate management; and until enactment of subsection (b) of section 213 in 1967, fixing the record date depended entirely upon action of the board of directors. Furthermore, subsection (b)(2) of section 213 was not enacted until 1969. Thus, section 213(a) confers the traditional and primary authority upon a board of directors to fix a record date for determining shareholders entitled to vote whether at a meeting of stockholders or by "express consent to corporate action in writing without a meeting." *See supra* note 2. The only limitation in section 213(a) is that the record date shall not be more than 60 days prior to the consent action. *Id.* Clearly, November 18—a date six weeks in the future—was not more than 60 days prior to the consent action.

Thus, notwithstanding section 228, a board of directors acting within the parameters of section 213(a) may exercise its business judgment in fixing a record date for shareholder action by written consent. Given Empire's concession that the Board of Directors had not impermissibly manipulated the corporate machinery, *see supra* note 8, the fixing of November 18 fell within the Board's business judgment. Furthermore, the District Court in Florida held that the Topeka transaction was entered into for an entirely bona fide business purpose and not for the purposes of entrenching Deltona's Board of Directors and defeating Empire's solicitation action.[13] Equally significant is the fact that November 18 was the date of the proposed closing of the Topeka transaction. Thus, Deltona's

fixing of a record date of November 18 was reasonably related to the issuance by Deltona of new stock to Topeka. Hence, Deltona's selection of November 18 as the record date for Empire's proposed corporate action was a reasonable exercise of business judgment and not violative of section 228. Therefore, the decision of the Court of Chancery, denying a preliminary injunction, is affirmed.

---

13. In an oral ruling denying Empire's motion to enjoin the Topeka transaction, the District Court held that the primary purpose of the Topeka transaction was to enhance the failing economic position of the Deltona Company.