Martin ALLEN, Boruch B. Frusztajer, Robert L. Gable, Nicholas P. Negroponte, Philip L. Read, Herbert Roth, Jr., and Computervision Corporation, a Delaware Corporation, Defendants Below, Appellants,

v.

PRIME COMPUTER, INC., a Delaware Corporation, and Provision Holdings, Inc., a Delaware Corporation, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted: Jan. 26, 1988.
Oral Decision: Jan. 26, 1988.
Written Opinion: April 8, 1988.

Steven J. Rothschild (argued), Edward P. Welch, Andre G. Bouchard, and Jean C. Kissane, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Peggy L. Kerr, of Skadden, Arps, Slate, Meagher & Flom, New York City, for appellants.

Jesse A. Finkelstein (argued), R. Franklin Balotti, Gregory V. Varallo, and James C. Strum, of Richards, Layton & Finger, Wilmington, John L. Warden, David B. Tulchin, Norman Feit, and Karen A. Popp, of Sullivan & Cromwell, New York City, of counsel, for appellees.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice.

This expedited interlocutory appeal arises from the adoption by Computervision Corporation of consent solicitation bylaws which delayed for at least twenty days the effectiveness of certain stockholder action taken by written consent.[1] Thus, we confront the validity of a bylaw purporting to provide ministerial review of such stockholder action under *Datapoint Corp. v. Plaza Securities Co.*, Del.Supr., 496 A.2d 1031 (1985). Computervision and its directors (collectively, Computervision) appeal a decision of the Court of Chancery preliminarily enjoining Computervision from enforcing its consent solicitation bylaws. While the Chancellor found the bylaw provisions reasonable, he concluded that they nonetheless violated the principles established in *Datapoint.* We agree and affirm. Neither 8 *Del.C.* § 228 (Supp. 1987), providing for stockholder action by written consent, nor *Datapoint*, sanction the delay which these bylaws countenance. In so ruling, we announce standards governing the validity of bylaw provisions on this subject.

### I.

On December 28, 1987 appellee, Prime Computer, Inc. (Prime), launched a tender offer for any or all of the outstanding shares of Computervision. In its Offer to Purchase, Prime expressed its intention to solicit stockholder consents to enable it to circumvent a Computervision defensive mechanism.[2]

In the face of this hostile offer Computervision adopted the so-called Consent Solicitation Bylaws, the stated purpose of which was to give shareholders adequate time to become informed about the issues presented in a consent solicitation. The full text of the pertinent bylaws is set out in the appendix to this opinion. Basically, with an exception not pertinent here, Section 12 of the bylaws delayed for an absolute minimum period of twenty days, beginning with the commencement of a solicitation, the effectiveness of any action taken by written consent pursuant to § 228. Section 13 of the bylaws established a procedure for inspecting, counting and challenging the validity of the consents. It provided that within three days of receipt of the first valid consent the Computervision board was to appoint a nationally recognized independent inspector of elections to review the consents. The inspector was required to issue a preliminary report no sooner than twenty days from the commencement of the solicitation. The report

---

**1.** We accepted the appeal on Saturday, January 23, 1988, received the parties' opening briefs on January 24, their reply briefs on January 25, and heard argument on Tuesday, January 26. We announced our decision to affirm in an oral ruling in open court on that same day, with the further statement that this more detailed opinion would follow in due course.

**2.** Computervision adopted a "rights plan" in February, 1987, which gave shareholders rights entitling them to shares of any acquiring party worth twice the value of each right. The rights could be redeemed by the board under certain circumstances, or by a board elected pursuant to § 228, if an all cash offer for all of Computervision's stock was outstanding.

could then be challenged, if notice of the challenge was delivered within 48 hours. Thus, the effect of Sections 12 and 13 was to prevent the consummation of shareholder action by consent for at least twenty days, and probably longer.

The Chancellor found that despite the reasonableness of the bylaws, both Sections 12 and 13 were void under *Datapoint.* On appeal Computervision argues that *Datapoint* is inapposite because these bylaws are less restrictive than those in *Datapoint,* and in any event, the bylaws are the type of reasonable regulation of consent solicitations which *Datapoint* contemplates.

### II.

To obtain a preliminary injunction the plaintiff must demonstrate a reasonable probability of success on the merits and that irreparable harm will occur absent the injunction. Additionally the plaintiff must show that the harm it would suffer absent an injunction outweighs the harm to the defendant if relief is granted. *Ivanhoe Partners v. Newmont Mining Corp.,* Del. Supr., 535 A.2d 1334, 1341 (1987); *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* Del.Supr., 506 A.2d 173, 179 (1986); *Gimbel v. Signal Companies, Inc.,* Del. Ch., 316 A.2d 599, 602 *aff'd,* Del.Supr., 316 A.2d 619 (1974).

When 8 *Del.C.* § 228, authorizing majority stockholder consent in lieu of a meeting, was added to the General Corporation Law in 1967, its broad use in takeover battles, which we now observe, was not contemplated.[3] However, the provisions of § 228

---

3. The full text of 8 *Del.C.* § 228 (Supp.1987) follows:

(a) Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, *setting forth the action* so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

(b) Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at a meeting of the members of a nonstock corporation, or any action which may be taken at any meeting of the members of a nonstock corporation, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all members having a right to vote thereon were present and voted and shall be delivered to the corpo-

ration by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

(c) Every written consent shall bear the date of signature of each stockholder or member who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section to the corporation, written consents signed by a sufficient number of holders or members to take action are delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

(d) Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders or members who have not consented in writing. In the event that the action which is consented to is such as would have required the filing of a certificate under any other section of this title, if such action had been voted on by stockholders or by members at a meeting thereof, the certificate filed under such other section shall state, in lieu of any statement required by such section concerning any vote of stockholders or members, that written consent has been given in accordance with this section, and that written

are applicable to any Delaware company unless the certificate of incorporation restricts its use.

Briefly stated, for there to be valid stockholder action under § 228 written consents must be signed by holders of a majority of the outstanding voting shares. Consents, when not coupled with an interest, may be freely revoked by sending a signed revocation either to the party soliciting the consents, or to the party opposing the solicitation. Thus, any corporate action taken under § 228 is effective only upon the delivery of the proper number of valid and unrevoked consents to the corporation. Because § 228 clearly and unambiguously permits a majority of the stockholders of a corporation to act immediately and without prior notice to the minority, the statute must be given its plain meaning. *See Datapoint; Empire of Carolina, Inc. v. Deltona Corp.*, Del.Supr., 514 A.2d 1091 (1986).

■ As § 228(a) makes clear, the exercise of the right to act immediately by majority written consent may be modified or eliminated only by the certificate of incorporation. Thus, bylaws which effectively abrogate the exercise of this right are invalid. However, as we noted in *Datapoint*, a bylaw which imposed "minimal essential provisions for ministerial review of the validity of the action taken by shareholder consent" would serve the purposes of § 228. *Id.* at 1036. Accordingly, bylaws which "defer consummation of shareholder action by consent in lieu of meeting until a ministerial-type review has been performed" were expressly approved by us in *Datapoint*. 496 A.2d at 1036.

■ In 1987, after the 1986 *Datapoint* decision, the General Assembly amended § 228. Significantly, the provisions of Section 228(a) upon which we relied in *Datapoint* were unaffected. It is, of course, a cardinal principle of statutory construction that the legislature is "presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute

notice has been given as provided in this

without change." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978)); *See also, In re Appraisal of Enstar Corp.*, Del.Supr., 535 A.2d 1351, 1354 (1987) (definition of "stockholder" not changed despite several amendments to 8 *Del.C.* § 262). We consider that point to have significant force here.

### III.

■ In evaluating the reasonableness of a bylaw, which purports to establish ministerial review of the validity of consents, several factors are relevant. First, a court must determine the purpose sought to be served. A bylaw whose real purpose is delay of shareholder action is per se unreasonable. Second, the court should consider the impact of the bylaw upon the effective exercise of the power conferred under § 228. Finally, the bylaw should contain only the minimal requisites for a reliable and prompt ministerial review to ensure the orderly function of corporate democracy. Such ministerial review must not be unduly elaborate, should contain reasonable time periods only necessary to the circumstances, and should be one which, when administered in good faith, is reasonable and balanced. The Computervision bylaws clearly fail to meet these standards.

■ Section 12 of the bylaws, with its absolute minimum twenty day delay provision, the reasonableness of which is not explained, did more than "defer consummation of shareholder action until a ministerial review of the validity of the consents" had occurred. *Datapoint*, 496 A.2d at 1036. In the absence of a provision in the certificate of incorporation, limiting the exercise of stockholder rights under § 228, such a bylaw is void.

■ Section 13 of the bylaws, while purporting to establish ministerial review, contains the same minimum, but fatal, twenty

section.

day delay provision as Section 12. It too is void, even though the form of ministerial review, were it not coupled with the twenty day period, would probably be reasonable under *Datapoint*.

 Under the circumstances Prime has demonstrated a strong probability of success on the merits. As for irreparable harm, Computervision's bylaws are "so pervasive as to intrude upon fundamental stockholder rights guaranteed by statute." *Datapoint*, 496 A.2d at 1036. The Chancellor held, and we agree, that the deprivation of such a right, regardless of duration, is an injury not reasonably compensable by damages. *See also Plaza Securities v. O'Kelley*, Del.Ch., No. 7932, slip op. at 15 (March 15, 1985) (Opinion) (Brown, C.) [Available on WESTLAW, 1985 WL 11539]. Furthermore, a strong showing of success on the merits may compensate for a weak showing of irreparable harm. *Gimbel*, Del. Ch., 316 A.2d 599, *aff'd*, Del.Supr., 316 A.2d 619 (1974). We are satisfied, based upon the defendant's interference with a fundamental stockholder franchise, that the preliminary injunction was properly issued.

The judgment of the Court of Chancery is AFFIRMED.

## APPENDIX

### ARTICLE I

### STOCKHOLDERS

11. *Action by Written Consent.* Any action which is required to be or may be taken at any annual or special meeting of stockholders of the corporation may be taken without a meeting, without prior notice to stockholders and without a vote if consents in writing, setting forth the action so taken, shall have been signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or to take such action at a meeting at which all shares entitled to vote thereon were present and voted.

12. *Duration and Revocation of Consents.* In order that the corporation's stockholders shall have an opportunity to receive and consider the information germane to an informed judgment as to whether to give a written consent and in accordance with the procedures contained in the New York Stock Exchange policies and rules, any corporate action to be taken by written consent shall not be effective until, and the stockholders of the corporation shall be able to give or revoke written consents for, at least twenty (20) days from the date of the commencement of a solicitation (as such term is defined in Rule 14a–1(k) promulgated under the Securities Exchange Act of 1934, as amended) of consents, other than corporate action by written consent taken pursuant to solicitations of not more than ten (10) persons. For purposes of this Section and Section 13 of this Article I, a consent solicitation shall be deemed to have commenced when a proxy statement or information statement containing the information required by law is first furnished to the corporation's stockholders.

Consents to corporate action shall be valid for a maximum of sixty (60) days after the date of the earliest dated consent delivered to the corporation in the manner provided in Section 228(c) of the Delaware General Corporation Law. Consents may be revoked by written notice (i) to the corporation, (ii) to the stockholder or stockholders soliciting consents or soliciting revocations in opposition to action by consent proposed by the corporation (the "Soliciting Stockholders"), or (iii) to a proxy solicitor or other agent designated by the corporation or the Soliciting Stockholders.

Notwithstanding the foregoing, if independent counsel to the corporation delivers to the corporation a written opinion stating, or a court of competent jurisdiction determines, that this Section or Section 13 of this Article I, or any portion thereof, is illegal with respect to any corporate action to be taken by written consent for which a consent has theretofore been delivered to the corporation, in the manner provided in Section 228(c) of the Delaware General Corporation Law, whether prior or subsequent to the date of the adoption of this Section and Section 13 of this Article I, then this

Section or Section 13 of this Article I, or such portion thereof, as the case may be, shall after the date of such delivery of such opinion or such determination be null and void and of no effect with respect to any other corporate action to be taken by written consent.

13. *Inspectors of Election; Procedures for Counting Consents.* Within three (3) business days after receipt of the earliest dated consent delivered to the corporation in the manner provided in Section 228(c) of the Delaware General Corporation Law or the determination by the Board of Directors of the corporation that the corporation should seek corporate action by written consent, as the case may be, the Secretary shall engage nationally recognized independent inspectors of elections for the purpose of performing a ministerial review of the validity of the consents and revocations. The cost of retaining inspectors of election shall be borne by the corporation.

Consents and revocations shall be delivered to the inspectors upon receipt by the corporation, the Soliciting Stockholders or their proxy solicitors or other designated agents. As soon as consents and revocations are received, the inspectors shall review the consents and revocations and shall maintain a count of the number of valid and unrevoked consents. The inspectors shall keep such count confidential and shall not reveal the count to the corporation, the Soliciting Stockholder or their representatives or any other entity. As soon as practicable after the earlier of (i) sixty (60) days after the date of the earliest dated consent delivered to the corporation in the manner provided in Section 228(c) of the Delaware General Corporation Law or (ii) a written request therefor by the corporation or the Soliciting Stockholders (whichever is soliciting consents) (which request may be made no earlier than twenty (20) days after the commencement of the applicable solicitation of consents, except in the case of corporate action by written consent taken pursuant to solicitations of not more than ten (10) persons), notice of which request shall be given to the party opposing the solicitation of consents, if any, which request shall state that the corporation or Soliciting

Stockholders, as the case may be, have a good faith belief that the requisite number of valid and unrevoked consents to authorize or take the action specified in the consents has been received in accordance with these By–Laws, the inspectors shall issue a preliminary report to the corporation and the Soliciting Stockholders stating: (i) the number of valid consents; (ii) the number of valid revocations; (iii) the number of valid and unrevoked consents; (iv) the number of invalid consents; (v) the number of invalid revocations; (vi) whether, based on their preliminary count, the requisite number of valid and unrevoked consents has been obtained to authorize or take the action specified in the consents.

Unless the corporation and the Soliciting Stockholders shall agree to a shorter or longer period, the corporation and the Soliciting Stockholders shall have 48 hours to review the consents and revocations and to advise the inspectors and the opposing party in writing as to whether they intend to challenge the preliminary report of the inspectors. If no written notice of an intention to challenge the preliminary report is received within 48 hours after the inspectors' issuance of the preliminary report, the inspectors shall issue to the corporation and the Soliciting Stockholders their final report containing the information from the inspectors' determination with respect to whether the requisite number of valid and unrevoked consents was obtained to authorize and take the action specified in the consents. If the corporation or the Soliciting Stockholders issue written notice of an intention to challenge the inspectors' preliminary report within 48 hours after the issuance of that report, a challenge session shall be scheduled by the inspectors as promptly as practicable. A transcript of the challenge session shall be recorded by a certified court reporter. Following completion of the challenge session, the inspectors shall as promptly as practicable issue their final report to the Soliciting Stockholders and the corporation, which report shall contain the information included in the preliminary report, plus all changes in the vote totals as a result of the challenge and a

certification of whether the requisite number of valid and unrevoked consents was obtained to authorize or take the action specified in the consents. A copy of the final report of the inspectors shall be included in the book in which the proceedings of meetings of stockholders are recorded.

The corporation shall give prompt notice to the stockholders of the results of any consent solicitation or the taking of the corporate action without a meeting and by less than unanimous written consent.